[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the plaintiff acting by Michael Del Negro (hereinafter "the plaintiff" or "Del Negro") against the defendants, Remo and Assunta Santilli. It is an action, inter-alia, for fraudulent misrepresentations on the part of the defendants made to the plaintiff to induce the plaintiff to purchase specified assets of a business including the goodwill and inventory known as Santilli's Market (hereinafter also "the Market") located at 392-396 New Britain Avenue, Hartford, Connecticut. This Court heard testimony on August 24, 2000, August 29, 2000 and September 13, 2000. At the conclusion of the plaintiffs case-in-chief as to liability, defendants made an oral motion to dismiss. This Court issued a Memorandum of Decision dated November 9, 2002 in which the Court entered judgment for the plaintiff against the defendants for fraudulent misrepresentation. However, by Memorandum of Decision dated January 3, 2001, after a hearing, the Court vacated the CT Page 8839 judgment of November 9, 2000 and based upon the contents of said Memorandum of Decision of Judgment dated November 9, 2000 denied the oral motion to dismiss. By Memorandum of Decision dated January 3, 2001 the Motion for Leave to Amend the Plaintiffs Complaint dated December 6, 2000 was granted.
Prior to the continuance of this trial, the defendants filed a petition for bankruptcy under Chapter 7, there was a stay of these proceedings because of same, but subsequently the Bankruptcy Court issued a relief from stay to allow this trial to proceed. New counsel entered his appearance on behalf of the defendants. The parties filed additional stipulations of facts and exhibits, agreed that no more evidence would be presented and agreed that this Court should make a final decision including damages if liability and damages are found based upon the evidence presented and final briefs by the parties due ultimately on July 8, 2002. The Court has reviewed the briefs filed by the parties, and based upon said briefs and the totality of the evidence makes the following findings:
1. Rather than repeat the contents of the November 9, 2000 Memorandum of Decision, the Court hereby incorporates the contents of that memorandum by reference into this decision which sets forth the basis for this Court's finding by clear and convincing evidence that the said defendants committed fraudulent misrepresentations to the plaintiff for the reasons set forth in said Memorandum of Decision. The Court, therefore, concludes that the plaintiff has fulfilled its burden of proving by clear and convincing evidence that the defendants committed fraudulent misrepresentations to the plaintiff pursuant to the sale of the Market.
2. The Court will not attempt to rebut the claims made by the defendants in their brief dated July 3, 2002, except to comment as follows:
3. The Court finds Assunta Santilli also liable as stated in the November 9, 2000 decision and herein for the reasons stated therein and for the additional reason that fraudulent misrepresentations were made during the two visits by the plaintiff to the home of the defendants at which both defendants were present. The Court recognizes that plaintiff must prove its case by clear and convincing evidence, and defendants have taken exception to the finding of misrepresentation by Remo Santilli as to the issues of real property taxes and the lottery machine. The Court's main reason for finding liability for fraudulent misrepresentation by clear and convincing evidence was on the basis and is on the basis of the misrepresentations as to sales as well as the lack of credibility of Remo Santilli. The issues of the misrepresentations as to the real property taxes and the lottery machine were mentioned primarily to show that these CT Page 8840 were examples of fraudulent misrepresentation that undermined the credibility of Remo Santilli.
4. The Court is aware and does believe that the plaintiff is not pursuing its claims for recission or injunctive relief, and that it is seeking damages based upon fraudulent misrepresentation in Count Three of the Amended Complaint which incorporates the first ten paragraphs of Count One.
5. As for monetary damages the Court finds, by clear and convincing evidence, as follows:
 a. As a result of the fraudulent misrepresentations of the defendants, the plaintiff paid to the defendants the sum of $159,544.87 for purchase of the assets, inventory and goodwill of the Market. The Court further finds by clear and convincing evidence that the plaintiff paid rent to defendants for the lease of the premises where the Market was located from April 28, 1997 through December 31, 1997 in the amount of $24,530. In addition, plaintiff has proved by clear and convincing evidence that it paid $58,000 into the business to keep it afloat which monies would not have been necessary if the representations made the defendants were true and not fraudulent misrepresentations.
 b. These damages aforesaid total $242,074.87. It is clear and convincing from the evidence that the Market never made a profit during the time that the plaintiff operated the Market. Therefore, the court will not offset this amount by income to the Market (the Market owned and operated by the plaintiff), and for the additional reason that the defendants have not contested any of the damages sought by the plaintiff.
 c. Even though fraudulent misrepresentation has been proven as aforementioned and attorney's fees may be awarded based upon said finding, the Court is unaware of the way in which attorney's fees are being charged to the plaintiff whether it is a contingent fee or based upon an hourly rate. Absent a retainer agreement or some other evidence, the Court has no basis on which to award attorney's fees.
 6. The Court cannot award punitive damages other than attorney's fees because there has been no claim of violation of the Connecticut Unfair Trade Practices Act.
7. The Court does find that as a result of the defendants' fraudulent misrepresentations, these monies were wrongfully detained/retained by the defendants, and, therefore, C.G.S. § 37-3a is applicable. Therefore, the Court awards interest at ten percent per annum on the $159,544.87 CT Page 8841 from April 28, 1997 to July 22, 2002 as follows:
$15,954.49 per year for the years from April 28, 1997 to April 28, 2002, five years or $79,772.44, plus $1,330.00 per month from April 28, 2002 to July 28, 2002, three months at $1,330.00 or $3,990.00. This totals $83,762.44.
Since there is no evidence as to exactly when the rents of $24,530 were paid or the $58,000 was put into the business, the Court will assess interest from January 1, 1998 to August 1, 2002 at ten percent of $82,530. Interest is assessed per year at $8,253 for the four years of 1998, 1999, 2000 and 2001 or $33,012, plus $687.00 per month from January 1, 2002 to August 1, 2002, a period of seven months for an interest assessment of $4,809. This brings the total interest assessed under C.G.S. § 37a-3 to $121,583.44.
 CONCLUSION
The Court finds by clear and convincing evidence that the plaintiff has sustained its burden of proof as to Count Three, and the Court finds by clear and convincing evidence that the defendants committed fraudulent misrepresentations against the plaintiff.
Based upon the above, the Court hereby enters judgment for the plaintiff against the defendants as follows:
 Damages $242,074.87 Interest 121,583.44 ----------- Total $363.658.31
Judgment, is therefore, entered in favor of the plaintiff against the defendants in the total amount of $363,658.31.
 ___________________ Rittenband, JTR
CT Page 8842